BELFAST SAVINGS BANK, et al., In Equity

*vs.*

SANFORD & CAPE PORPOISE RAILWAY COMPANY.

York.    Opinion March 26, 1921.

*Where express power is given by statute, to issue an injunction, both temporary and permanent, the court is authorized to appoint at the same time, or at any time during the continuance of the injunction, one or more receivers to wind up the affairs of a corporation.*

This is a bill in equity brought under the provisions of R. S., Chap. 51, Sec. 82. Injunction both temporary and permanent was decreed restraining the defendant corporation, its officers and agents, from receiving any moneys, paying any debts, selling or transferring any assets of the corporation or exercising any of its privileges or franchises, appointing a receiver to wind up the affairs of the corporation. From this decree the defendant appealed.

*Held:*

1.   Where express power is given by statute, to issue an injunction, both temporary and permanent, if sufficient cause exists, there having been found sufficient cause to issue the injunction, the court is authorized by statute

to appoint at the same time, or at any time afterwards during the continuance of the injunction, one or more receivers to wind up the affairs of the corporation. The power so to appoint is limited only by the continuance of the injunction. The reason for such appointment is found in the reason and necessity for the injunction, and the exercise of the power to appoint a receiver must be left to the sound discretion of the sitting Justice when he puts in motion the equity power of the court to accomplish that which he deems in equity and good conscience the rights of the parties require.

On appeal. This is a bill in equity brought originally by the Belfast Savings Bank as sole plaintiff against the Sanford & Cape Porpoise Railway Company, under the provisions of Sec. 82, Chap. 51, R. S., alleging that the plaintiff was a creditor of the defendant corporation on account of unpaid interest on the 5% bonds of the defendant corporation, dated January 1, 1898, since July 1, 1915, and that the defendant had ceased to do business and that it possessed assets requiring the appointment of a receiver, praying that an injunction issue, and a receiver be appointed. A demurrer was filed to the original bill and overruled and the defendant thereupon answered. Subsequently the Portland Savings Bank was allowed to intervene upon petition as a creditor holding bonds on which interest was due, and an answer was filed to the petition to intervene.

Upon a hearing on the bill, answers, replications and proofs, the bill was sustained, and the defendant appealed. Appeal dismissed.

The case is fully stated in the opinion.

*Woodman & Whitehouse,* for plaintiff.

*Harry R. Virgin, and Eben Winthrop Freeman,* for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, JJ.

PHILBROOK, J. This is a bill in equity in which the Belfast Savings Bank was originally sole plaintiff. It is instituted under R. S., Chap. 51, Sec. 82, which provides in part, and so far as this case is concerned, as follows:

"Whenever any corporation . . . . has ceased to do business, . . . . upon application of any creditor or stockholder by bill in equity filed in the Supreme Judicial Court in the county in which it has an established place of business, or in which it held its last stockholders' meeting, . . . . such Court may, if it finds

that sufficient cause exists, issue an injunction, both temporary and permanent, restraining said corporation, its officers and agents, from receiving any moneys, paying any debts, selling or transferring any assets of the corporation, or exercising any of its privileges or franchises until further order, and may at any time make a decree dissolving said corporation."

Another section of the same chapter provides that at the time of ordering any such injunction, or at any time afterwards during its continuance, such court may also appoint one or more receivers to wind up the affairs of the company and to do other duties incident to a receivership, under the directions and orders of the court.

The plaintiff is a creditor of the defendant on account of unpaid interest on its bonds, but does not claim to be a creditor for any other cause. The plaintiff alleged that the defendant had ceased to do business and that it possessed assets requiring the appointment of a receiver. The defendant admits that it ceased to do business in April 1904, at which time it sold all its property and rights of every description to the Atlantic Shore Line Railway, but claims that since that time it has had no assets. Notwithstanding this transfer of 1904, the plaintiff claims that the defendant did have, and, at the time of the bringing of this bill, continued to have assets consisting of choses in action in favor of the defendant against various parties and based upon various causes. The defendant not only says that these choses in action, if they ever existed, passed by the sale and transfer in 1904, but further says that these choses in action, if they ever existed, and if when they were fresh had value, have now by the lapse of years become stale demands, that they are no longer valid choses in action, no longer have value and cannot be classed as assets requiring the appointment of a receiver.

To the original bill, a demurrer was filed and overruled, and thereupon the defendant answered. Subsequent thereto the Portland Savings Bank, holding a large block of the defendant's bonds upon which interest was due and unpaid, was allowed to intervene and become a party plaintiff to the bill. To this the defendant also answered. In its answer to the Belfast Savings Bank, the defendant averred: (1) that by the terms of the trust mortgage given to secure the payment of the bonds and interest-bearing coupons, it was agreed by and between the defendant, and the trustee under said mortgage, and all owners and holders of bonds issued thereunder, that

the right of action under said trust mortgage should be vested in said trustee and that under no circumstances should any individual bondholder or coupon-holder have any right to institute any suit, action or other proceeding thereunder, except upon the failure or refusal of the trustee to act where it was the duty of said trustee so to do, as expressly provided in said trust mortgage; (2) that there had been no refusal of the trustee to act where it was its duty so to do under the terms of the trust mortgage; (3) that under the terms of the bonds issued under said trust mortgage, the holder of said bonds upon becoming such holder, thereby expressly agreed that no recourse for the payment of principal or interest of such bonds should be had to any stockholder, officer or director of the defendant corporation under or in pursuance of any law whatsoever, whether such law was in force at the time of the issue of said bonds or whether said law should be thereafter enacted; (4) that as to any property or assets of the defendant consisting of any action or cause of action accruing to the defendant against any of its stockholders, officers or directors, such last named property and assets are not  property and assets which justify or require the appointment of a receiver in this proceeding at the instigation of the plaintiff or of any holder of said bonds or coupons.

In its answer to the Portland Savings Bank, after alleging causes of defense similar to those used in its answer to the Belfast Bank, the defendant further alleged: (1) that all the facts upon which the claims and choses in action were based, were known to the Portland Savings Bank more than ten years prior to the commencement of  this bill  in equity, or could have been ascertained by the Portland Bank, by due diligence more than ten years prior to the commencement of this bill in equity; (2) that the Portland Savings Bank had actual or constructive notice of all facts relating to said claims and choses in action at the time when the Portland Savings Bank purchased its bonds; (3) that the Portland Bank has had actual or constructive notice of all facts relating to said claims and choses in action as such facts have from time to time occurred, and that no such facts have occurred within ten years prior to the commencement of this bill in equity; (4) that it had no assets other than those covered by the trust mortgage; (5) that it had no claims nor choses in action other than those as to which there existed the defense of laches of the

statute of limitations; (6) that it had no claims nor choses in action which had accrued within the period of ten years next prior to the commencement of this bill in equity.

The cause came on for hearing upon bill, answer, replication and proofs. The voluminous record amply demonstrates both the diligence of counsel and the patience of the sitting Justice.

After hearing, findings were made covering with great care and impartiality all the issues raised by either side. A full history of the doings of the defendant, its relations to other corporations, and the conduct of its business by its officers and agents were all inquired into and stated. Upon these findings, it was ordered, adjudged and decreed that the bill be sustained with costs for the plaintiff, the restraining orders prayed for were issued, a receiver was appointed and full and complete instructions and authority to act were given to that receiver. It is unnecessary to recite the decree in detail. By the appeal of the defendant from this decree, the matter is before the court to be considered and dealt with according to the equity powers provided in R. S., Chap. 51, Sec. 87. Under familiar and well established rules the decision of the sitting Justice is conclusive upon all questions of fact unless shown to be clearly erroneous, and the burden of demonstrating error rests upon the appellant. After a painstaking examination of the record we not only find no such error but on the contrary fully concur with the findings of fact as stated by the Justice hearing the cause in the court below.

It must be conceded after examination of the elaborate and exhaustive briefs of counsel, that up to this point the real battle wages about the question whether or not a receiver should have been appointed. As incident to, and bearing upon this question, counsel have discussed the evidence and cited many authorities, upon their respective claims as to whether the choses in action under consideration are valid claims, or whether by reason of invalidity in their inception, or because of loss of validity by limitation, laches or otherwise, these claims, if they ever existed, have ceased to be assets. The defendant claims that if no valid assets exist, nor assets having present actual value, there should be no receiver appointed. To ask decision at this stage of procedure upon questions of fact which may arise upon the nature or validity of such claims, or any defenses against the same either at law, or in equity, would be asking this court to determine questions of fact upon which either side would have a right to a jury

trial, but, moreover, we would be expected to decide such questions in the absence of testimony taken out at a regular trial where the precise issue in each individual action might be stated in various ways or defended for various reasons. We cannot concede that it is the right or duty of this court, at this stage of the proceedings, to determine or prejudge the rights of parties, either plaintiff or defendant, upon issues of fact which may be heard in a proper forum, at a proper time, and under proper presentation of evidence. It was well said in the recent case of *Van Oss* v. *Petroleum Co.*, 113 Maine, 180, where express power is given by statute, to issue an injunction, both temporary and permanent, if sufficient cause exists, that having found sufficient cause to issue the injunction, the court is authorized by statute to appoint at the same time, or at any time afterwards during the continuance of the injunction, one or more receivers to wind up the affairs of the corporation. The power so to appoint is limited only by the continuance of the injunction. The reason for such appointment is found in the reason and necessity for the injunction, and the exercise of the power to appoint a receiver must be left to the sound discretion of the sitting Justice when he puts in motion the equity power of the court to accomplish that which he deems in equity and good conscience the rights of the parties require.

> *Appeal dismissed.*
> *Decree of sitting Justice con-*
> *firmed with additional costs*
> *of this appeal.*